UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RUBIN LAMONT STONE,

        Plaintiff,                              Case No. 1:11-cv-820

v.                                                    Honorable Robert J. Jonker

CINDI CURTIN et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Rubin Lamont Stone presently is incarcerated at the Alger Maximum Correctional Facility (LMF), though the actions about which he complains occurred while he was housed at the Oaks Maximum Correctional Facility (ECF).  He sues the following ECF employees: Warden Cindi Curtin; Assistant Deputy Warden for Housing R. Sanders; Resident Unit Manager R. Thomas; Assistant Resident Unit Supervisor Robert McCary; and Resident Unit Officer Krista Benson.

Plaintiff alleges that, on November 24, 2010, he was placed in segregation after assaulting another prisoner.  He complains generally that he has been subjected to "inhumane treatment and unfair, excessive, and arbitrary long segregation period." (Compl., docket #1, Page ID#3.)  He alleges that Defendant Warden Curtin instituted an illegal practice of not providing soap and other hygiene products to indigent prisoners unless those prisoners seek an indigent loan.  Plaintiff alleges that the products should be free because they are supplied through a federal grant program.  He further alleges that the warden unlawfully sells the products through the prison commissary.  Plaintiff contends that he has made complaints about the "illegal practice" (*id.*), but his grievances have either been thrown away or not processed.

After he complained about the issue, Plaintiff allegedly was subjected to unspecified retaliation and harassment by unidentified individuals.  Plaintiff subsequently was transferred to LMF, which he asserts was also a retaliatory act.  He further contends that an unspecified individual instructed the LMF warden to keep Plaintiff in segregation for his filing of a civil action.  *See Stone v. McDonald et al.*, No. 1:11-cv-602 (W.D. Mich.).

Plaintiff seeks injunctive relief, together with compensatory and punitive damages in the amount of $10 million from each Defendant.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff fails even to mention Defendants Sanders, Thomas, McCary or Benson in the body of his complaint. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a

short and plain statement of the claim showing that the pleader is entitled to relief"). He therefore fails to state a claim against Defendants Sanders, Thomas, McCary and Benson.

### B. Eighth Amendment

Plaintiff alleges that he was subjected to inhumane treatment by Defendant Curtin's policy of requiring indigent prisoners to apply for an indigent loan in order to obtain hygiene supplies. He also alleges that his placement in segregation for an excessive period is inhumane.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege that he was denied basic

human needs and requirements. Notwithstanding Plaintiff's complaint that indigent segregation prisoners were forced to apply for indigent loans in order to receive hygiene products, he at no time alleges that he was deprived of necessary hygiene products if he made the loan application. He therefore fails to allege that his basic hygiene needs were not met. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, No. 09-6283, 2001 WL 2579779, at *5 (6th Cir. June 29, 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. § 1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against any Defendant.

### C. Retaliation

Plaintiff alleges that he was subjected to unspecified harassment and retaliation by unidentified persons because of his complaints about the policy regarding prisoner hygiene products. He also alleges that his grievances were not processed or resolved, also ostensibly in retaliation for his complaints. Finally, he alleges that he was transferred to LMF in retaliation for filing a civil rights action in Case No. 1:11-cv-602, and he claims that the LMF warden was instructed by an unidentified individual to keep Plaintiff in administrative segregation as punishment for filing the lawsuit.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. With respect to his claim that he was subjected to retaliation because of his complaints about Defendant Curtin's policy, Plaintiff has not presented descriptive facts about the nature of the allegedly retaliatory conduct or the persons engaged in that conduct. His allegations are wholly insufficient to support

a conclusion that any conduct by any Defendant was either sufficiently adverse to meet the adverse-action requirement or that the conduct was causally connected to Plaintiff's protected conduct.

Similarly, to the extent that Plaintiff alleges that unknown individuals deprived him of access to the grievance process, he fails to demonstrate that any Defendant engaged in adverse action that would deter a person of ordinary firmness from continuing to engage in protected conduct. First, a defendant's failure to process one or more grievances in no way suggests that any future grievance will be denied or ignored. Second, Plaintiff does not have a constitutional right to the grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). As a result, any interference in the grievance process could not have impaired a freestanding constitutional interest. Third, even if Plaintiff was improperly prevented from having his grievance heard, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See Walker*, 128 F. App'x at 446 (holding that placement on modified grievance access would not deter a person of ordinary firmness from filing a grievance). *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001) (same). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Walker,* 128 F. App'x at 446; *Kennedy*, 20 F. App'x at 471. For all these reasons, the failure to process a prison grievance would not deter a person of ordinary firmness from exercising his First Amendment right to file a grievance. *Thaddeus-X*, 175 F.3d at 394.

Plaintiff's third claim of retaliation – that he was transferred from ECF to LMF in retaliation for filing a civil rights action, Stone v. McDonald et al., No. 1:11-cv-602 (W.D. Mich.)

– is equally without merit. As with his other claims of retaliation, Plaintiff fails to allege which Defendant allegedly was responsible for his transfer, and his allegations are deficient for this reason alone. Even assuming that Defendant Curtin approved the transfer to LMF, Plaintiff cannot demonstrate that the transfer amounted to adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (holding that "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). In *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010), the Sixth Circuit recognized that transferring a prisoner from the general population of one prison to administrative segregation or to another prison's lock-down unit can be sufficient to constitute adverse action. The *Hill* court held that transfer to a lock-down unit at another facility is more than a routine transfer, and is more akin to the type of transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. Here, unlike in *Hill*, Plaintiff was transferred from administrative segregation at one Level IV facility to administrative segregation at another Level IV facility. Plaintiff makes no allegation that administrative segregation at LMF was in any way different or harsher than administrative segregation at ECF or that he lost additional privileges. *See Hill*, 630 F.3d at 474 (noting that a transfer to administrative segregation constituted adverse action only because "actions that result in more restrictions and fewer privileges are considered adverse").

Further, even if Plaintiff could demonstrate that the transfer amounted to adverse action, he has alleged no causal connection between the filing of his lawsuit and his transfer. First, Plaintiff's complaint in *Stone v. McDonald et al.* was filed on or about June 6, 2011. Plaintiff does not allege the date on which he was transferred. He therefore fails to allege that his transfer followed shortly after the filing of his lawsuit. Even had he alleged such temporal proximity, his allegations nevertheless fail to state a claim. While temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, Plaintiff's action in *Stone v. McDonald* was dismissed by the Court *sua sponte* for failure to state a claim, and the complaint was never served on Defendant Curtin or any other Defendant. *Id.* (Op. & J. Jul. 29, 2011) (docket ##5, 6.) As a consequence, nothing in the complaint or in the record of the case suggests that Defendant Curtin was even aware of the lawsuit before Plaintiff was transferred. For all these reasons, Plaintiff fails to state a claim of retaliation against Defendant Curtin. *See Iqbal*, 129 S. Ct. at 1950 ( "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.") (quoting FED. R. CIV. P. 8(a)(2)).

### D. Alleged Unlawful Sale of Hygiene Products

Plaintiff broadly alleges that, because prisoner hygiene items were provided by a federal grant to the state, Warden Curtin violated the law by allowing the items to be sold in the prison commissary. Accepting this sweeping claim as true for the purposes of this decision, Plaintiff

fails to assert a constitutional basis for a civil rights claim against Curtin. He appears to claim entitlement to relief based on his belief that Curtin violated federal criminal law. However, a private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). In other words, a private citizen lacks standing to initiate a criminal prosecution of another citizen. *See Diamond*, 476 U.S. at 64-65; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004). Plaintiff therefore fails to state a claim based on the allegedly illegal resale of prisoner hygiene products.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:      August 31, 2011               /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          UNITED STATES DISTRICT JUDGE